IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TESSA CROSS,[1] | § | |
| | § | No. 167, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 23-03-03TN |
| DEPARTMENT OF SERVICES | § | Petition No. 23-04711 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES/DIVISION OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |
| In the Interest of: | § | |
| RYDER CROSS (DOB 4/27/22) | § | |

Submitted: September 9, 2024
Decided: October 31, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Child Attorney's response, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1) By order dated April 4, 2024, the Family Court terminated the parental rights of the appellant, Tessa Cross ("Mother"), in her minor son, born in April 2022 (the "Child").[2] Mother appeals.

(2) On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that he has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has not provided any points for the Court's consideration. The appellee, the Delaware Department of Services for Children, Youth and Their Families/Division of Family Services (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In June 2022, DSCYF filed for emergency custody of the Child after receiving a hotline report that Mother was chasing a man—later adjudicated to be the Child's father ("Father")—with a knife, while holding the Child (then a two-month-old) in her arms. After police were called, Mother fled the scene in her vehicle

---

[2] The Family Court's order also terminated the parental rights of the Child's father. We refer only to facts in the record that relate to Mother's appeal.

with the Child improperly restrained. With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] As of the preliminary protective hearing, Mother had pending criminal charges based on the incident that resulted in DSCYF petitioning for custody of the Child. DSCYF was aware that Mother had mental health and substance abuse issues because of its prior involvement with Mother and three of her other children—involvement that resulted in Mother's voluntary termination of her parental rights in those children. The Family Court found that the Child remained dependent in Mother's care because of the alleged domestic violence and Mother's mental health and substance abuse treatment needs.

(4) As of the two-day adjudicatory hearing,[4] the Child had recently been hospitalized and intubated for pneumonia. DSCYF contacted Mother, who went to the hospital and signed a consent for the Child's medical treatment. Mother declined, however, to wait for her treatment worker to arrive and see the Child. During the Child's three-week stay at the hospital, Mother failed to appear for several scheduled visits with the Child. The Child's paternal grandmother testified to ongoing domestic violence between Mother and Father. DSCYF had not been able to communicate consistently with Mother, and Mother failed to appear for the second day of the

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

[4] The hearing had to be continued after one of the participating attorneys fell ill.

adjudicatory hearing. DSCYF was exploring relative placement options. The Family Court found that the Child remained dependent in Mother's care because of ongoing domestic violence and that DSCYF had made reasonable efforts to prevent the unnecessary removal of the Child from his home.

(5) At the September 20, 2022 dispositional hearing, the Family Court reviewed the case plan that DSCYF had developed to facilitate Mother's reunification with the Child. Mother's case plan required Mother—who had previously undergone a mental health evaluation at the direction of DSCYF and was currently serving a probationary sentence for criminal charges—to: (i) engage in the recommended mental health treatment and to complete a domestic violence offender program; (ii) undergo a substance abuse evaluation and follow any recommended treatment; (iii) notify DSCYF of any new criminal charges or hearing dates and successfully complete probation; (iv) engage with a family interventionist to create a budget, search for employment, and complete a parenting class; (v) acquire and maintain stable housing; and (vi) work with the Child's medical providers as needed and comply with any treatment recommendations. As of the dispositional hearing, the Child had adjusted well to his foster home and had follow-up appointments scheduled with a gastroenterologist and a pulmonologist. Mother continued to arrive at visits with Father, despite the parties having a court-ordered no-contact order in place.

4

(6) As of the December 16, 2022 review hearing, Mother had completed two parenting classes and was participating in a third. DSCYF had made a referral to a mental health provider because Mother wanted a second opinion regarding her mental health diagnoses. Mother was engaged with her family interventionist, employed part-time, and engaged with domestic violence offender programming. Because Mother had been consistently visiting with the Child, DSCYF had increased her visitation to three days per week. However, Mother had not yet completed a substance abuse evaluation, was on home confinement for new DUI charges, and was behind on her rent payments. Mother admitted that she was living with Father but opined that domestic violence was not an issue because she was engaged with domestic violence offender programming. The Child was doing well in foster care but continued to suffer from acid reflux and receive breathing treatments. The Child had had several medical visits, one of which Mother attended. The Family Court found that Mother's compliance with her case plan had been mixed and observed that she had not completed the housing and substance-abuse components of her case plan. The court also noted its concern with Mother's history of domestic violence. The Family Court advised Mother to attend the Child's medical appointments and to speak with her DSCYF workers and her attorney to determine how she could complete the outstanding elements of her case plan. The court scheduled a second review hearing for March 8, 2023.

(7)     In February 2023, DSCYF moved to change the Child's permanency goal from reunification to termination-of-parental-rights (TPR) for the purpose of adoption. As of the March 8, 2023 review hearing, Mother: (i) had undergone a mental health evaluation with Dr. Joseph Zingaro; (ii) had completed a substance abuse evaluation; (iii) had filed for a protection-from-abuse (PFA) order against Father; (iv) was employed full-time; and (v) was no longer living with Father. Mother was also working with her family interventionist for housing referrals and had completed multiple parenting courses. However, Dr. Zingaro opined that Mother was unable to safely parent the Child because her mental functioning and emotional maturity was that of a 14- or 15-year-old child. The Family Court found that Mother's compliance with her case plan had been mixed and changed the permanency goal from reunification to the concurrent goals of reunification and TPR for the purpose of adoption. The day after the review hearing, DSCYF filed a TPR petition on the basis of Mother's failure to plan for the Child's physical needs or mental and emotional health and development.

(8)     As of the May 30, 2023 permanency hearing, Mother had made significant progress on her case plan. Specifically, Mother: (i) had obtained a two-year PFA order against Father; (ii) was attending weekly therapy sessions and learning anger management skills; (iii) was compliant with the terms of her probation; (iv) had completed three parenting classes; and (v) was enrolled in

6

domestic violence offender programming. Mother was also employed and had paid the first month's rent on a two-bedroom apartment. Finally, Mother was actively engaged during her visits with the Child. The Child was prescribed a nebulizer to use as needed and had an upcoming appointment with a neurologist but was otherwise thriving in his foster home. At DSCYF's request, the Family Court stayed DSCYF's TPR petition.

(9)     As of the September 21, 2023 post-permanency hearing, Mother was no longer making progress on her case plan. Mother was noncompliant with her mental health treatment and had angrily confronted her family interventionist— evidence, in DSCYF's view, that Mother was not implementing the anger management strategies that she had been learning in therapy. Mother claimed to be working at Paramount Health Care, but Paramount had advised DSCYF that no one with Mother's name had ever been employed there. Mother had also been unsuccessfully discharged from domestic violence offender programming and was living in a shelter. DSCYF had explored the relative placement options identified by Mother and considered them inappropriate. The Child was flourishing in foster care. At the conclusion of the hearing, the Family Court ordered Brandywine Counseling & Community Services (BCCS) to release its records regarding Mother's substance abuse evaluation and treatment. After the parties received the BCCS records—which reflected that Mother had misrepresented her use of illegal substances and criminal

7

history as well as the fact that Mother had not followed BCCS's treatment recommendations—the Family Court scheduled a TPR hearing.

(10) At the January 23, 2024 TPR hearing, the Family Court heard testimony from Mother, Mother's DSCYF treatment worker, the Child's DSCYF permanency worker, the Child's foster mother, a social worker for Children & Families First, and the Child's court-appointed special advocate. The evidence presented fairly established that Mother had re-engaged with services in the month before the TPR hearing. But DSCYF remained gravely concerned about Mother's mental health treatment because it was a significant component of her case plan and Mother had been inconsistent with her compliance during the pendency of the dependency-and-neglect proceedings. Mother was also still on probation, having recently been incarcerated for violating its terms, and she had tested positive for marijuana two weeks before the TPR hearing. The Child's permanency worker had observed a visit between Mother and the Child and opined that Mother was unresponsive to the Child's cues and relied on television to entertain the Child. Mother had also visited the Child during his recent hospitalization for RSV and tried to remove him from the hospital room against medical advice. Finally, Mother had previously lied about being employed and had provided fake paystubs to DSCYF at the September 2023 post-permanency hearing. Following the hearing, the Family Court terminated

8

Mother's parental rights in the Child on the basis of her failure to plan. This appeal followed.

(11) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[5] We review legal rulings *de novo*.[6] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[7] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(12) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[12] If the Family Court

---

[5] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[6] *Id.* at 440.

[7] *Id.*

[8] *Id.*

[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[11] *Id.* at 537.

[12] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[13] Both of these requirements must be established by clear and convincing evidence.[14]

(13) Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate based on her failure to plan adequately for the Child's physical needs or mental and emotional health and development[15] and that the Child, who came into care as an infant, had been in DSCYF custody for well over six months.[16] The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and—giving significant weight to factor 5 (the mental and physical health of the individuals involved)—found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest.

(14) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We

---

[13] *Shepherd*, 752 A.2d at 536-37.

[14] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[15] 13 *Del. C.* § 1103(a)(5).

[16] *Id.* § 1103(a)(5)(b).

therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*_____
Justice

11